IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-00307-01-CR-W-DGK |
| | ) | |
| | ) | |
| EDITH MISAEL SALAS-LOPEZ, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Edith Misael Salas-Lopez's Motion to Suppress Evidence. (Doc. No. 39). The Government has filed suggestions in opposition to Defendant's motion (Doc. No. 43).

A hearing on Defendant's motion was held on October 30, 2017. (Doc. No. 47). During the hearing, the Government called Kansas City, Missouri Police Department Sergeant Rod Gentry as a witness. Defendant testified on his own behalf. The following exhibits were offered and admitted into evidence:

      Government's Exhibit 1:    Photograph of Defendant's bag;

      Government's Exhibit 2:    Photograph of Defendant following his arrest;

      Government's Exhibit 3:    Defendant's boarding pass and itinerary; and

      Government's Exhibit 4:    Disc containing 09/08/16 surveillance footage from the Greyhound terminal.

**I.    FACTS**

Kansas City, Missouri Police Department Sergeant Rod Gentry supervises the Missouri Western Interdiction and Narcotics Drug Task Force ("MOWIN"). (Tr. at 4). Sergeant Gentry has been with the Kansas City, Missouri Police Department since 1994. (Tr. at 4-5). His experience includes 18-20 months with the street narcotics unit and 24 months with the drug enforcement unit. (Tr. at 5-6). He became a sergeant in the interdiction unit in March of 2016. (Tr. at 7).

Sergeant Gentry testified that Kansas City is the focus of interdiction efforts due to its geographic location in the middle of the country and the number of highways that pass through the downtown area which facilitate distribution of narcotics throughout the United States. (Tr. at 8-9). MOWIN has an office at the Greyhound Bus terminal located at 1101 Troost Avenue in Kansas City, Missouri. (Tr. at 9-10, 13).

On September 8, 2016, a bus that originated in California and traveled through Denver, Colorado arrived at the Greyhound terminal and parked in bay number two. (Tr. at 14, 15). This bus was significant to Sergeant Gentry, since both California and Colorado are known source states for drug trafficking. (Tr. at 13-14, 15, 87). After the bus arrived, passengers exited the bus so that the bus could be serviced during a one-hour layover before continuing to its next destination. (Tr. at 15-16, 40-42). Passengers are not allowed to reboard or bring bags back into the bus during the servicing process. (Tr. at 19, 24). As the passengers exited the bus, Sergeant Gentry briefly observed an individual wearing a two-toned grey shirt ascend back into the bus with a denim bag; he did not observe the individual's head and/or face and his focus was on the denim bag. (Tr. at 20, 22, 50, 51, 89). Sergeant Gentry testified that based on his training and experience, this was suspicious since the individual had just gotten off the bus and because there were covert officers, including a K-9 officer, working at the terminal. (Tr. at 21-22, 30, 55, 88). It was extremely rare for someone to get back on the bus. (Tr. at 20, 21, 24). Sergeant Gentry believed the individual was trying to distance himself from the bag. (Tr. at 24).

Sergeant Gentry continued to watch the bus and observed an individual in a two-toned grey shirt he believed to be the person who carried the bag back onto the bus exit with a different bag. (Tr. at 26-27, 51). Sergeant Gentry and Detective Willingham made contact with that individual and performed a consensual search of his bag. (Tr. at 27). Nothing incriminating was found. (Tr. at 27). Sergeant Gentry and Detective Willingham then returned to the bus and located the denim bag unattended in a seat of the bus. (Tr. at 28-29). Greyhound employees and other passengers could have accessed the bag. (Tr. at 29, 109-110). The bag did not have any identification on it. (Tr. at 29, 109). Sergeant Gentry testified the fact that the bag had been taken back onto the bus and left alone on a seat was suspicious and indicative of someone separating himself from the bag. (Tr. at 30). Detective Willingham retrieved the bag so that a K-9 sniff could be performed. (Tr. at 30, 84).

At approximately 7:20 a.m., Sergeant Gentry and Detective Willingham exited the bus with the bag and stepped onto the loading platform; Defendant approached the officers seconds later and reached for the bag as he told Detective Willingham the bag was his. (Tr. at 30-31, 33, 52; Gvt. Exh. 4). Sergeant Gentry identified himself as law enforcement and asked for permission to search the bag. (Tr. at 31, 86). This consent was requested less than twenty seconds after Detective Willingham picked up the bag. (Tr. at 32-33).

Sergeant Gentry testified Defendant verbally consented to a search of the bag (Tr. at 31); Defendant testified that he shrugged his shoulders (Tr. at 106, 111). Sergeant Gentry further testified that Defendant appeared to be in his late 20s or early 30s, appeared to understand what was going on, appeared to understand and speak English, and did not appear to be under the influence of drugs or alcohol. (Tr. at 32, 25-36). Neither Sergeant Gentry nor Detective Willingham threatened Defendant or made any promises to Defendant. (Tr. at 33). They did not have any physical contact with Defendant. (Tr. at 90). Defendant watched as the officers searched his bag and did not tell them to stop. (Tr. at 34, 111). A search of the bag revealed a compressed roll of heroin. (Tr. at 35). Defendant was then placed under arrest at approximately 7:22 a.m. (Tr. at 35, 53; Gvt. Exh. 4).

Defendant's criminal history is comprised of felony convictions, including a hit-and-run causing death or injury, driving under the influence causing bodily injury, and illegal reentry of a previously deported alien. (Tr. at 36). He has been deported from the United States on four separate occasions and is currently in the United States illegally. (Tr. at 38, 106-107).

## I. ANALYSIS

Defendant seeks suppression of evidence obtained as a result of the September 8, 2016, search on grounds of Fourth Amendment violations. He specifically argues that law enforcement lacked reasonable suspicion to seize his bag and further lacked consent to search the bag. These arguments are not supported by the evidence.

### A. Reasonable Suspicion

The Fourth Amendment prohibits unreasonable searches and seizures. Law enforcement may briefly seize an individual's bag when there is reasonable suspicion that the bag contains narcotics. United States v. Place, 462 U.S. 696, 708 (U.S. 1983); United States v. Weaver, 966 F.2d 391, 393-94 (8th Cir. 1992); United States v. Condelee, 915 F.2d 1206, 1209 (8th Cir. 1990). Reasonable suspicion is determined by the totality of the circumstances and must be

3

based on "more than an 'inchoate and unparticularized suspicion or hunch.'" Condelee, 915 F.2d at 1209. "Whether certain facts viewed as a whole establish reasonable suspicion must be determined by viewing them in light of a law enforcement officer's experience and familiarity with the practices of narcotics couriers." Id. See also United States v. Sokolow, 490 U.S. 1, 7-8 (1989).

In this case, the totality of the circumstances provided law enforcement with the requisite reasonable suspicion. Sergeant Gentry is experienced in narcotic investigations and interdiction efforts. At the time Defendant's bag was taken off the bus, Sergeant Gentry knew Kansas City to be conducive to distributing narcotics throughout the United States given its location in the middle of the country and numerous highway systems. The bus that Defendant exited had originated in California and traveled through Denver, Colorado -- both known source states for narcotic trafficking. See Sokolow, 490 U.S. at 3; United States v. Tillman, 81 F.3d 773, 775 (8th Cir. 1996); United States v. White, 42 F.3f 457, 460 (8th Cir. 1994); Condelee, 915 F.2d at 1210. Sergeant Gentry observed an individual carrying a denim bag reenter the bus after exiting during the time covert officers were typically working at the terminal.[1] Based on his training and experience, Sergeant Gentry found this suspicious and suggestive of someone trying to distance himself from the bag. Furthermore, the officers located the denim bag unattended in the bus without any identification on it. Defendant's motion to suppress should be denied on this ground.

**B.     Consent**

"A consensual search does not violate the Fourth Amendment if the consent was given voluntarily and without coercion." United States v. Meza-Gonzalez, 394 F.3d 587, 592 (8th Cir. 2005). The burden falls on the government to prove by a preponderance of the evidence that consent was voluntary. Id. Consent is measured by a standard of objective reasonableness, focusing on "what the typical reasonable person would have understood from the exchange with the officer." Id. In determining voluntariness, the court is charged with the responsibility of judging witnesses' credibility. Id.

---

[1] Although defense counsel made much about what Sergeant Gentry observed while watching the video during the October 30, 2017 suppression hearing (i.e., Defendant reboarding the bus after the K-9 had returned to its handler's vehicle, a female passenger reboarding the bus), these observations are irrelevant to Sergeant Gentry's reasonable suspicion at the time of the event. (Tr. at 56-57). See Ornelas v. United States, 517 U.S. 690, 696 (1996)("The principal components of a determination of reasonable suspicion . . . will be the events which occurred *leading up to* the stop or search . . . ")(emphasis added); United States v. Sanchez, 572 F.3d 475, 478 (8th Cir. 2009).

4

Consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," rather than the "product of duress or coercion, express or implied." Schneckloth v. Bustamonte, 412 U.S. 218, 225, 227 (1973). The voluntariness of consent is a "question of fact to be determined from the totality of all the circumstances." Id. at 227; see also United States v. Urbina, 431 F.3d 305, 309 (8th Cir. 2005). Courts consider both the characteristics of the person giving consent as well as the environment in which consent was given when assessing voluntariness. See Urbina, 431 F.3d at 309.

Personal characteristics relevant in determining whether voluntary consent was given include:

> (1) [the individual's] age; (2) his general intelligence and education; (3) whether he was intoxicated or under the influence of drugs when he consented; (4) whether he consented after being informed of his right to withhold consent or of his Miranda rights; and (5) whether, because he had been previously arrested, he was aware of the protections afforded to suspected criminals by the legal system.

Id. (citing United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990)). The consenting individual's ability to understand the language in which consent was requested should be considered. See United States v. Contreras, 372 F.3d 974, 978 (8th Cir. 2004). Factors considered in analyzing the environment in which consent was given include whether the individual:

> (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

Urbina, 431 F.3d at 309 (citing Chaidez, 906 F.2d 381). These factors "should not be applied mechanically, and no single factor is dispositive or controlling." United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000)(citation omitted).

During the suppression hearing in this case, Sergeant Gentry testified that Defendant verbally consented to the officers searching his bag. Defendant did not affirmatively testify otherwise, just that he shrugged his shoulders in response to the officers' request. To the extent this gesture could be construed as a refusal of consent, I find Sergeant Gentry's testimony to be

5

more credible based on Defendant's lack of response or objection once the search had commenced.

The preponderance of evidence demonstrates that Defendant's consent was voluntary. The encounter between Defendant and law enforcement was brief. Sergeant Gentry testified Defendant gave consent less than twenty seconds after the bag was removed from the bus. Defendant was not in custody at the time. Neither Sergeant Gentry nor Detective Willingham threatened, physically coerced or made Defendant any promises to obtain consent. Defendant gave verbal consent on the public loading platform and watched as Sergeant Gentry searched his bag without telling him to stop. Due to his previous arrests and convictions, Defendant was familiar with the protections afforded by the legal system. He did not appear to be under the influence of drugs or alcohol and seemed to Sergeant Gentry to understand and speak English.

## II. CONCLUSION

For the reasons stated above, it is hereby

RECOMMENDED that Defendant Salas-Lopez's Motion to Suppress Evidence be denied.

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 16th day of November, 2017, at Kansas City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge